UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ALICIA GARDNER,

                                        Plaintiff,

                    -vs-                                13-CV-787-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                                        Defendant.

APPEARANCES:   LAW OFFICES OF KENNETH HILLER (JAYA ANN SHURTLIFF, ESQ., of Counsel), Amherst, New York, for Plaintiff.

WILLIAM J. HOCHUL, JR., United States Attorney (DENNIS J. CANNING, Special Assistant United States Attorney, of Counsel), Buffalo, New York, for Defendant.

This matter has been transferred to the undersigned for all further proceedings, by order of Chief United States District Judge William M. Skretny dated August 6, 2014 (Item 13).

Plaintiff Alicia Gardner initiated this action on July 30, 2013, pursuant to the Social Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final determination of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits under Title II and Title XVI of the Act, respectively.   Plaintiff has moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (see Item 9).  In response, the Commissioner has filed a memorandum of law and cross-

motion for judgment on the pleadings (*see* Item 11).  For the following reasons, plaintiff's motion is denied, and the Commissioner's cross-motion is granted.

## BACKGROUND

Plaintiff was born on January 20, 1967 (Tr. 164).[1]  She filed applications for SSDI and SSI with a protective filing date of July 12, 2010, alleging disability due to shoulder injury, knee and hip problems, and a breast mass, with an onset date of October 16, 2007 (Tr. 164-69; 180).  The applications were denied administratively on October 5, 2010 (Tr. 52-58).  Plaintiff requested a hearing, which was held by videoconference before administrative law judge ("ALJ") Gerardo Pico on February 21, 2012 (Tr. 127-49).  Plaintiff appeared and testified at the hearing, and was represented by counsel.  Two Medical Experts ("MEs"), Drs. Ramón Fortuño and Germán Malaret,  and Vocational Expert ("VE") Hector Puig, also testified.

On March 12, 2012, the ALJ issued a decision finding that plaintiff was not disabled under the Act (Tr. 10-26).  Following the sequential evaluation process outlined in the Social Security Administration regulations (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ found that plaintiff had "severe" physical impairments (including status post left shoulder surgery, multiple arthralgias, bulging disc, and left hip pain), and "nonsevere" impairments (depression and asthma), but that these impairments, considered alone or in combination, did not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings")  (Tr. 16).  The ALJ discussed the medical evidence

---

[1]Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner as part of the answer in this action (Item 8).

in the record, including progress notes and opinions from treating medical sources, reports of diagnostic imaging, plaintiff's hearing testimony regarding her complaints of pain and other symptoms, and the hearing testimony of the Medical Experts, and determined that while plaintiff was unable to perform any of her past relevant work as a certified nursing assistant, she had the residual functional capacity ("RFC") to perform light work[2] with additional exertional and non-exertional limitations (Tr. 16-17).   Relying on the VE's testimony indicating that an individual of plaintiff's age, education, work experience, and RFC with these limitations would be able to perform the requirements of a significant number of jobs existing in the national and local economies (Tr. 20-21), and using Rule 202.21 of the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2 (the "Grids"), as a framework for decision-making, the ALJ determined that plaintiff has not been disabled within the meaning of the Act at any time since the alleged onset date (Tr. 22).

The ALJ's decision became the final decision of the Commissioner on June 4, 2013, when the Appeals Council denied plaintiff's request for review (Tr. 1-6), and this action followed.

In her motion for judgment on the pleadings, plaintiff contends that the Commissioner's determination should be reversed because the ALJ  failed to discharge his affirmative duty to fully develop the record, and failed to properly assess the credibility

---

[2]Light work involves lifting no more than 20 pounds occasionally, 10 pounds frequently, standing and/or walking for six hours in an eight-hour work day and sitting six hours in an eight-hour work day.  *See* 20 C.F.R. §§ 404.1567(b), 416.967(b); Social Security Ruling (SSR) 83-10. If someone can perform light work, we determine that they can also perform sedentary work unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.  *See* 20 C.F.R. §§ 404.1567(b), 416.967(b).

of plaintiff's testimony and statements with regard to her complaints of pain. *See* Items 9-1, 12. The government contends that the Commissioner's determination should be affirmed because the ALJ's decision is based on substantial evidence. *See* Item 11.

## DISCUSSION

### I.    Scope of Judicial Review

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive …." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999). The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts. *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012). The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at \*2 (W.D.N.Y. March 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at \*6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted). Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at \*6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations...."); *see Kohler*, 546 F.3d at 265. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will

not be disturbed so long as substantial evidence also supports it.  *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013).  "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying.  *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

## II.     Standards for Determining Eligibility for Disability Benefits

To be eligible for SSDI or SSI benefits under the Social Security Act, plaintiff must present proof sufficient to show that she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).  As indicated above, the regulations set forth a five-step process to be followed when a disability claim comes

-6-

before an ALJ for evaluation of the claimant's eligibility for benefits. *See* 20 C.F.R.§§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities...." 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also* §§ 404.1509, 416.909 (duration requirement). If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings. If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work. If the claimant has the RFC to perform his or her past relevant work, the claimant will be found to be not disabled. Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the analysis. If the claimant meets this burden, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform. *Lynch*, 2008

WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)).  "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience."  *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted).  If, however, a claimant has non-exertional limitations (which are not accounted for in the Grids) that "significantly limit the range of work permitted by h[er] exertional limitations then the grids obviously will not accurately determine disability status …." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted).  In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' "  *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

III.    **The ALJ's Disability Determination**

In this case, ALJ Pico determined at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since October 16, 2007, the alleged onset date (Tr. 15).  At steps two and three, as indicated above, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or equals the severity of any of the impairments in the Listings (Tr. 16).  At step four, the ALJ discussed the medical evidence of record and found that although plaintiff was unable to perform her past relevant "medium" exertional work as a certified nursing assistant, she had the RFC to perform light work as outlined in the regulations, with the following additional limitations:

> She is limited to occasionally do repetitive movements and occasional crouching, crawling and bending.  She can occasionally be exposed to fumes, odors, extreme temperature changes and other environmental irritants.

(Tr. 16-17).  In making this finding, the ALJ gave "great weight" to the hearing testimony of Dr. Malaret, the ME who reviewed plaintiff's medical records and offered an opinion regarding plaintiff's functional limitations which is fully consistent with the ALJ's RFC assessment (Tr. 19; *see also* Tr. 36-44).  The ALJ also found that plaintiff's medically determinable impairments could reasonably be expected to cause the pain and symptoms alleged, but that plaintiff's statements and testimony about the intensity, persistence, and limiting effect of her symptoms were "not entirely credible" to the extent they suggested functional limitations greater than the restrictions outlined in the RFC assessment (Tr. 19–20).

At the final step, based on the testimony of the VE regarding the extent to which these limitations might erode the occupational base for unskilled sedentary work, the ALJ determined that there are jobs existing in significant numbers in the national economy that plaintiff could perform, considering his age, education, work experience, and RFC (Tr. 21-22).

## IV.    Plaintiff's Motion

### A.    Development of the Record

It is a well-established rule in the Second Circuit "that the social security ALJ, unlike a judge in a trial, must on behalf of all claimants … affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding."  *Lamay v. Comm'r of*

*Soc. Sec.*, 562 F.3d 503, 508–09 (2d Cir. 2009) (internal quotation marks, alterations, and citation omitted), *cert. denied*, 559 U.S. 962 (2010); *accord Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999).  Under this rule, "where there are deficiencies in the record, an ALJ is under an affirmative obligation to develop a claimant's medical history even when the claimant is represented by counsel …." *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (internal quotation marks omitted).  On the "flip-side" of this same proposition, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." *Petrie v. Astrue*, 412 F. App'x 401, 406 (2d Cir. 2011) (internal quotation marks omitted).

Plaintiff contends that the ALJ failed to discharge this duty to develop the record, and failed to conduct a full and fair hearing, because he did not make an adequate inquiry into the extent of plaintiff's functional limitations, and did not provide counsel with an opportunity to conduct further examination of plaintiff in this regard.  To the contrary, the court's review of the hearing transcript reveals that the ALJ questioned plaintiff about the details of her shoulder injury and surgery, as well as subsequent treatment by doctors and physical therapists (Tr. 31-33).  Plaintiff testified as to the functional limitations of her left shoulder, as well as problems with her right shoulder, left hip, knees, and back (Tr. 33-34). She described difficulties with lifting her arm over her head, scratching her back, combing her hair, and lifting objects off the floor (Tr. 33), as well as difficulties climbing stairs, sleeping, sitting, and standing (Tr. 34).

The ALJ also provided counsel with a full and fair opportunity to question the medical and vocational experts with regard to their opinions as to the extent of plaintiff's

functional limitations  and the effect of these limitations on plaintiff's ability to perform work (Tr. 39-48).  At the conclusion of the experts' testimony, the ALJ asked counsel whether there were any other questions, and there was no recorded response (Tr. 48).   According to plaintiff, the transcript indicates that the ALJ improperly interrupted plaintiff's counsel before she could complete her response, and then quickly closed the hearing without allowing further questioning.  However, the court's review of the transcript reveals that the interruption occurred following a brief discussion about problems with delays in the videoconference transmission, and that there was ample opportunity following the interruption for counsel to request further opportunity to question plaintiff.

Plaintiff further contends that the Commissioner failed to develop the record by attempting to obtain an RFC assessment from a treating source.  However, the Second Circuit has held that, where the record contains sufficient medical evidence to support the ALJ's RFC assessment, "it would be inappropriate to remand solely on the ground that the ALJ failed to request medical opinions in assessing residual functional capacity."  *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013); *see also Mims v. Colvin*, 2014 WL 411652, at *3 (W.D.N.Y. Feb. 3, 2014) (relevant inquiry is whether, absent an assessment from a treating source, the record is sufficient to support the ALJ's RFC assessment).

In this case, the ALJ's written determination reveals that he considered all of the medical evidence of record, including reports and progress notes from Dr. Mark Anders, an orthopedist who treated plaintiff for her left shoulder injury in 2007 (Tr. 207, 209); Dr. Philip Stegemann, an orthopedic surgeon who performed arthroscopic surgery on plaintiff's left shoulder in March 2008 (Tr. 244-52); Dr. Jesslyn Perry, plaintiff's primary care

physician, who saw plaintiff between January 2010 and January 2012  (Tr. 290-300; 314-32); Dr. Walter Grand, a neurosurgeon who examined plaintiff on March 1, 2011 (Tr. 315-16); Dr. Donald Nenno, an orthopedic surgeon who saw plaintiff between July 2011 and January 2012 (Tr.  301-08; 312-13; 338); and physical therapist Wayne Burnett, who saw plaintiff for physical therapy during August-November 2008 (Tr. 233-41), and again during April-December 2011 (Tr. 310-11; 318-19; 322-25; 334-36).  In addition, the record contained several reports of x-rays, MRIs, and CT scans, all of which provided a substantial evidentiary basis for Dr. Malaret's opinion as to plaintiff's functional limitations, which the ALJ relied upon in making his RFC assessment.

Based on this review, the court finds that the ALJ's RFC assessment was based on a sufficiently developed record, and that the ALJ did not commit legal error by failing to obtain an assessment from a treating source.

### B.    Credibility

Plaintiff also contends that the ALJ failed to properly assess the credibility of plaintiff's testimony regarding her complaints of disabling pain and limitations of function. The general rule in this regard is that the ALJ is required to evaluate the credibility of testimony or statements about the claimant's impairments when there is conflicting evidence about the extent of pain, limitations of function, or other symptoms alleged.  *See Paries v. Colvin*, 2013 WL 4678352, at *9 (N.D.N.Y. Aug. 30, 2013) (citing *Snell v. Apfel*, 177 F.3d 128, 135 (2d Cir. 1999) ("Where there is conflicting evidence about a claimant's pain, the ALJ must make credibility findings.")).  The Commissioner has established a two-step process to evaluate a claimant's testimony regarding his or her symptoms:

> First, the ALJ must consider whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain or symptoms alleged by the claimant.  Second, if the ALJ determines that the claimant is impaired, he then must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms.  If the claimant's statements about his symptoms are not substantiated by objective medical evidence, the ALJ must make a finding as to the claimant's credibility.

*Matejka v. Barnhart*, 386 F. Supp. 2d 198, 205 (W.D.N.Y. 2005), *quoted in Hogan v. Astrue*, 491 F. Supp. 2d 347, 352 (W.D.N.Y. 2007); *see* 20 C.F.R. §§ 404.1529, 416.929.

The regulations outline the following factors to be considered by the ALJ in conducting the credibility inquiry: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain; (5) any treatment, other than medication, that the claimant has received; (6) any other measures that the claimant employs to relieve the pain; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 416.929(c)(3)(i)–(vii); *see also Meadors v. Astrue*, 370 F. App'x 179, 184 n.1 (2d Cir. 2010).  The Commissioner's policy interpretation ruling on this process provides further guidance:

> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility.  The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.  It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.  The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *4 (S.S.A. July 2, 1996).

In this case, as indicated above, the ALJ fully considered plaintiff's testimony and statements to treating sources regarding her pain and functional limitation of her left arm and shoulder following her injury in October 2007 and arthroscopic surgery in March 2008, and found them "credible, but not at the level alleged" (Tr. 19).  According to the ALJ, considering the medical evidence of record and the testimony of the MEs, plaintiff's medically determinable impairments could reasonably be expected to cause the pain and symptoms alleged, but her statements and testimony about the intensity, persistence, and limiting effect of her symptoms were not entirely credible to the extent they suggested functional limitations greater than the restrictions outlined in the RFC assessment (Tr. 19–20).  As the above discussion demonstrates, that assessment is supported by the findings of plaintiff's treating sources and the reviewing MEs, as well as other substantial medical evidence in the case record, and is sufficiently grounded in the evidence and articulated in the ALJ's determination to make clear to the claimant, to this court, and to subsequent reviewers the weight given to plaintiff's statements about her functional limitations, and the reasons for that weight.

As such, and upon review of the record as a whole, the court finds that the ALJ's credibility assessment in this case was performed in accordance with the requirements of the Social Security Act, its implementing regulations, and the weight of controlling authority. Accordingly, plaintiff is not entitled to reversal or remand on this ground.

## **CONCLUSION**

For the foregoing reasons, the court finds that the ALJ's decision is based on correct legal standards and supported by substantial evidence, and the Commissioner's determination must therefore be upheld.  Accordingly, plaintiff's motion for judgment on the pleadings (Item 9) is denied, the Commissioner's cross-motion for judgment on the pleadings (Item 11) is granted, and the case is dismissed.

The Clerk of the Court is directed to enter judgment in favor of the Commissioner, and to close the case.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:    October 8, 2014